STATE OF CONNECTICUT *v.* PHILLIP H. VOLLHARDT

KING, C. J., ALCORN, COTTER, THIM and RYAN, Js.

Argued May 9—decided July 16, 1968

*A. Robert Gordon,* public defender, for the appellant (defendant).

*Peter W. Gillies,* special assistant state's attorney, for the appellee (state).

RYAN, J.  The defendant was charged in an information in four counts with the crimes of statutory rape, incest, indecent assault, and wilfully and unlawfully causing or permitting a child under the age of sixteen years to be placed in such a situation that her health was likely to be impaired or of committing acts likely to impair the health or morals of the child, all of which crimes were alleged to have been committed upon his daughter. Upon a trial to the jury, the defendant was found guilty on all four counts. The evidence indicated that the defendant's improper relationship with his daughter began when she was ten years old and culminated with the last attack on or about July 24, 1963, when she was fifteen years of age. The defendant's appeal is predicated on certain rulings on evidence centering around the admission into evidence of a conversation between the defendant and his daughter at the state police barracks.

On July 14, 1964, the defendant was taken into custody by police officers while he was at work and was brought by them to the Westbrook barracks. On that same morning, the defendant's daughter went to the Westbrook barracks, where a written statement, previously given by her to the police concerning the defendant's alleged conduct with her, was read to the defendant in her presence. Following this confrontation, the defendant requested a conference with his daughter in a separate room. His request for the conference was based on a prior suggestion made to him by a police officer. The defendant and his daughter were alone in a room,

and there was a conversation between them which lasted from twenty minutes to half an hour. When the complaining witness was asked on direct examination to relate the conversation, the defendant interposed an objection, and, at his request, the jury were excused. In the absence of the jury, objection was made on the ground that, if the conversation revealed a confession, a proper foundation would have to be laid before it could be introduced as evidence. The court overruled the objection, and an exception was noted. At this time, the defendant made no claim that the statement was involuntary, nor did he cite any circumstances which would suggest that this was the case. Upon the return of the jury to the courtroom, the witness related the substance of the conversation. She testified that the defendant asked her, for the sake of the family, to say that the charges were untrue. She then said to him: "Well you did this to me, didn't you?" The defendant replied: "Yes."

Later in the trial, it was revealed that the complaining witness had been instructed by a policewoman to attempt to get the defendant to admit that he was having incestuous relations with her. The room in which the conversation between the defendant and his daughter took place was assigned by Joseph M. Hart, a state police lieutenant, is in the upstairs portion of the barracks and is used as a detective office. It adjoins the office where the complainant's statement was read to the defendant and is a short distance away from, but not adjacent to, the office of Lieutenant Hart. It contained a hidden microphone and speaker system. In Hart's office, there was a tape recorder connected to all the rooms in the state police barracks. The tape recorder contained a speaker system through which a re-

corded conversation could be heard. Three police officers, Lieutenant Hart, Richard K. Spencer, a state police detective, and Hamlin Bell, assistant chief of the Clinton police department, went to Hart's office to set up and connect the tape recorder to the detective office. The defendant did not know that the conversation was being recorded or that the police were eavesdropping. The three police officers recorded the conversation on the tape recorder and listened to the conversation over the speaker. All of them overheard both the daughter's question with regard to the charges against the defendant and the defendant's answer. Although the defendant was in custody at this time, he received no warning of his constitutional rights. He was not warned that he could remain silent and that any statements he made could be used against him.

Subsequently, the state offered as witnesses the three police officers who had overheard the conversation between the defendant and his daughter. When the first of the officers was asked to relate the conversation he had overheard, the defendant objected on the ground, inter alia, that no foundation had been laid as required by No. 126 of the 1963 Public Acts (General Statutes §§ 54-1b, 54-1c). The court sustained the objection and, during the presentation of the state's case in chief, excluded any testimony by the police officers as to what they had heard of the conversation between the defendant and his daughter.

The defendant took the stand in his own behalf and denied that he had any sexual relations with his daughter and asserted that he never committed an indecent assault upon her person. The state in its cross-examination of the defendant sought to inquire as to the content of any conversation he might

have had with his daughter during the time they were alone in the detective office at the Westbrook barracks. The defendant objected and, in the absence of the jury, made the claim that he could not be compelled on cross-examination to testify with respect to a confession of the crime unless it was first shown that the confession was voluntary, and he claimed that this rule applied even though the evidence was offered merely as a contradictory statement for the purpose of impeachment. The court then inquired whether it was the defendant's claim that the statement, if made, was involuntary. The defendant replied that he did not claim that the statement was involuntary in that it was extracted from him by force or under some promise of leniency. He claimed that it was involuntary because "the police set a trap for him and used his daughter as bait" and that, "to that psychological extent, it is, in itself, involuntary—limiting it to that." The state's claim was that the inquiry was solely on the question of credibility. The court overruled the objection, and exception was duly noted. The defendant then denied any recollection of the part of the conversation with his daughter wherein, according to her testimony, he admitted having incestuous relations with her. Later during the cross-examination, the defendant was asked whether he recalled having had any conversations with the police officers while at the Westbrook barracks, whereupon the defendant objected on the ground that constitutional safeguards and § 54-1c of the General Statutes had not been complied with prior to the defendant's conversation with his daughter.

At this point the following occurred: "The Court: Do you make any claim that Mr. Vollhardt asked for

an attorney and it was denied him?" The defendant through his counsel replied: "I haven't made that claim, and I can't." The objection was overruled, and exception was duly taken. The defendant testified in answer to the question that, while he did talk with Detective Spencer at the barracks, he did not recall the substance of the conversation.

On redirect examination, the defendant was asked whether he had made any statement in the police station in regard to the truth of the charges against him. The state objected and the following occurred: "The Court: Let me get this straight, counselor. You now want to open the door to inquiry as to what the accused may have said while he was in the police station. Is that correct? Mr. Gordon: I want to open the door to what the accused said when they first read these charges to him because all we have so far is charges are read to you [sic]. Request to go into the other room. What happened there? That is what I am getting at. What happened while the police officers were gathered? The Court: It seems to me it is going to materially prolong the trial, but if that is what you want, I will permit the inquiry to be opened." The defendant then testified that he had said that he was not guilty.

On completion of the state's recross-examination of the defendant, the defendant moved to strike all of the testimony concerning the conversation between himself and his daughter and between himself and Detective Spencer. The court denied the motion, and an exception was noted.

After the defense had rested, the state in rebuttal presented Detective Spencer as a witness to testify to the conversation between the defendant and his daughter which he overheard while listening to the speaker system in the office of Lieutenant Hart. The

defendant objected on the ground that, since the testimony of the defendant was limited to his statement at the confrontation as opposed to the conversation which took place between himself and his daughter in the detective office, any attempt to admit the latter conversation through the testimony of the police officers who overheard it would be subject to the same objections as were made previously to the testimony of the complainant and the cross-examination of the defendant. The objection was overruled, and the witness testified in substance that he heard the defendant's daughter ask the defendant if he denied the charges against him and that the defendant answered "No." Two other police officers testified to the same effect. The defendant's objections on the same ground were overruled by the court, and exceptions were noted.

The defendant, in his brief, urges that his oral confession was involuntary and should have been excluded. When the state sought to elicit the defendant's statements from the complaining witness, the jury were excused for the purpose of permitting the defendant to be heard on his objection to the offer. At this time, there was no claim that any statement made by the defendant was involuntary. It was his right during the interlocutory hearing, in the absence of the jury, to cross-examine the witness and, if he saw fit, to testify himself and to offer evidence concerning all the surrounding circumstances. It is quite apparent that, at the time of the court's first ruling on the question, neither the court nor the defendant was aware of the electronic eavesdropping by the police. Later, after this fact became known, the defendant, during his cross-examination, objected to a question concerning his conversation with his daughter on the ground that the confes-

sion was involuntary. The court once again heard the defendant's objection in the absence of the jury.

The defendant's trial commenced after the decision of the United States Supreme Court in *Escobedo* v. *Illinois,* 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977, but prior to its decision in *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. The holdings in the *Escobedo* case are applicable to this case, but, under the rule of *Johnson* v. *New Jersey,* 384 U.S. 719, 86 S. Ct. 1772, 16 L. Ed. 2d 882, the doctrine of the *Miranda* case does not apply retroactively to govern this case. Nevertheless, both cases are relevant on the issue of the voluntariness of the confession and must be considered in our determination of that question. *Darwin* v. *Connecticut,* 391 U.S. 346, 88 S. Ct. 1488, 20 L. Ed. 2d 630; *Davis* v. *North Carolina,* 384 U.S. 737, 86 S. Ct. 1761, 16 L. Ed. 2d 895.

Unless the state has, in a given case involving a particular accused, proved that under all the circumstances a particular confession by him was voluntary, that confession is inadmissible. The state is required to prove voluntariness as a prerequisite to the admissibility of a confession in any case. *State* v. *Traub,* 151 Conn 246, 249, 196 A.2d 755, cert. denied, 377 U.S. 960, 84 S. Ct. 1637, 12 L. Ed. 2d 503. The attention of the trial judge must be "focused, for purposes of the Federal Constitution, on the question whether the behavior of the State's law enforcement officials was such as to overbear . . . [the defendant's] will to resist and bring about confessions not freely self-determined—a question to be answered with complete disregard of whether or not . . . [the defendant] in fact spoke the truth." *Rogers* v. *Richmond,* 365 U.S. 534, 544,

81 S. Ct. 735, 5 L. Ed. 2d 760. A defendant has the right at some stage of the proceedings to object to the use of a confession and to have a fair hearing and a reliable determination on the issue of voluntariness without regard to the truth or falsity of the confession. "In jurisdictions following the orthodox rule, under which the judge himself solely and finally determines the voluntariness of the confession, or those following the Massachusetts procedure, under which the jury passes on voluntariness only after the judge has fully and independently resolved the issue against the accused, the judge's conclusions are clearly evident from the record since he either admits the confession into evidence if it is voluntary or rejects it if involuntary. Moreover, his findings upon disputed issues of fact are expressly stated or may be ascertainable from the record." *Jackson* v. *Denno*, 378 U.S. 368, 378, 84 S. Ct. 1774, 12 L. Ed. 2d 908.

In the instant case, the trial court made no separate and explicit findings on disputed issues of fact concerning the events leading up to, and surrounding, the defendant's admissions since there were no factual issues in dispute. All the facts involved in the alleged confession appear of record. The court's conclusion that the confession was voluntary is clearly ascertainable therefrom.

Two interlocutory hearings on the question of voluntariness were held in the absence of the jury. The defendant stated specifically that he made no claim that the confession was extracted from him by force or under some promise of leniency. The evidence is clear that the defendant was alone in a room with his daughter at his request. There was no behavior by the police which overbore the defendant's will to resist, nor is there anything to indicate

that his confession was not freely self-determined. His only claim is that the police set a trap for him and to that extent the statements made were psychologically involuntary because he did not know that the police were listening. "A defendant's statements to the prosecuting witness or victim of the crime are ordinarily held admissible even though he was unaware that such person was co-operating with the authorities who mechanically or electronically intercepted the conversation." Note, 97 A.L.R.2d 1283, 1306; *Lopez* v. *United States,* 373 U.S. 427, 438, 83 S. Ct. 1381, 10 L. Ed. 2d 462; *Carbo* v. *United States,* 314 F.2d 718, 738 (9th Cir.); *United States* v. *Kabot,* 295 F.2d 848, 853 (2d Cir.), cert. denied, 369 U.S. 803, 82 S. Ct. 641, 7 L. Ed. 2d 550; *United States* v. *Schanerman,* 150 F.2d 941, 944 (3d Cir.); *People* v. *Ketchel,* 59 Cal. 2d 503, 520, 381 P.2d 394; *People* v. *Hughes,* 203 Cal. App. 2d 598, 601, 21 Cal. Rptr. 668; *People* v. *Wojahn,* 169 Cal. App. 2d 135, 142, 337 P.2d 192; *State* v. *Dooley,* 208 La. 203, 207, 23 So. 2d 46. Although the defendant has made no claim of unlawful search or seizure, we note in passing that the holding of the United States Supreme Court in the recent case of *Katz* v. *United States,* 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576, is not applicable to the facts of the present case. See the concurring opinions of Justices Harlan and White in *Katz* v. *United States,* supra, 360, 362.

In the instant case there was no evidence of mental or physical coercion, no invasion of privacy and no inducement which caused the defendant to make these statements. In the absence of such factors, a declarant assumes the risk that the person to whom he makes damaging statements may repeat these statements in court to be used against the

declarant. *People* v. *Lopez,* 60 Cal. 2d 223, 248, 384 P.2d 16.

The defendant also claims that *Escobedo* v. *Illinois,* 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977, precludes the admissibility of his oral confession because he was not warned of his right to counsel or of his right to remain silent prior to the conversation with his daughter. The majority of state and federal cases have held that the *Escobedo* case does not apply unless either the accused has explicitly requested an opportunity to consult with counsel or a lawyer retained by the accused or his family has sought such a consultation. Comment, "Developments in the Law of Confessions," 79 Harv. L. Rev. 935, 1002; see *People* v. *Hartgraves,* 31 Ill. 2d 375, 380, 202 N.E.2d 33; *Browne* v. *State,* 24 Wis. 2d 491, 510, 131 N.W.2d 169; see also *Mefford* v. *State,* 235 Md. 497, 513, 201 A.2d 844, cert. denied, sub nom. *Blackburn* v. *Maryland,* 380 U.S. 937, 85 S. Ct. 944, 13 L. Ed. 2d 825. In the case at bar, the defendant concedes that he did not ask for counsel. From the record it appears that the defendant's private conversation with his daughter took place shortly after he was brought to the barracks. There is no indication of any previous police interrogation. The fact that a policewoman suggested to the complaining witness that she ask the defendant the pertinent question as to his guilt and the further fact that a detective suggested to the defendant that he should talk with his daughter alone in no way reflect upon the voluntariness of the defendant's statements. While we recognize that both the *Escobedo* and the *Miranda* cases are relevant on the issue of voluntariness, considering the totality of the circumstances, the ruling of the trial court that the confession was voluntary and was admissible

not only in the state's case in chief but for the purpose of cross-examination of the defendant as well must be sustained. The rulings of the trial court wherein the police officers were permitted to testify in rebuttal concerning the defendant's statements to his daughter which were overheard by them were correct.

The defendant also urges that his confession was obtained before he had been advised of his right to counsel or his right to remain silent under § 54-1b of the General Statutes and that the confession was inadmissible pursuant to § 54-1c. Section 54-1b provides that any person arrested with or without a warrant, except persons arrested with a warrant issued pursuant to §§ 54-43, 54-163 or 54-169, shall be presented "before the circuit court session next held in the circuit where the offense is alleged to have been committed . . . [and that, before] any person so arrested is put to plea, he shall be advised that he has a right to retain counsel, that he has a right to refuse to make any statement and that any statement he makes may be introduced into evidence against him." "Any . . . confession . . . , written or oral, obtained from an accused person who . . . has not been informed of his rights as provided by section 54-1b shall be inadmissible." § 54-1c.

The defendant claims that the intent of these statutes, adopted in 1963, is to render inadmissible any confession obtained prior to warning the accused of his constitutional rights and that, as such, they represent a codification of the requirements of *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, which was decided in 1966. We cannot agree with this construction. The language of the statutes is clear and unambiguous, and, accordingly, their intent is to be determined from the language used.

*Derby Savings Bank* v. *Kurkowski,* 155 Conn. 60, 68, 230 A.2d 26; *State* v. *Springer,* 149 Conn. 244, 248, 178 A.2d 525. The purpose of the statutes is to ensure that an accused is presented before the session of the Circuit Court next held, which in this case would be the day following his arrest, at which time he must be advised of his rights before he is put to plea. See *State* v. *Darwin,* 155 Conn. 124, 133, 230 A.2d 573, rev'd on other grounds, 391 U.S. 346, 88 S. Ct. 1488, 20 L. Ed. 2d 630. Section 54-1c renders inadmissible any confession received when there has been either a delay in presentment or a failure to warn an accused of his rights pursuant to § 54-1b. The defendant does not claim that there was any delay in his presentment to the Circuit Court or that he was not warned of his rights prior to his plea being entered. We conclude therefore that the trial court was correct in ruling that neither § 54-1b nor § 54-1c rendered the defendant's oral confession inadmissible under the circumstances of this case.

There is no error.

In this opinion the other judges concurred.