STATE OF CONNECTICUT *v.* MICHAEL PIORKOWSKI
(13537)

O'Connell, Foti, Lavery, Landau, Heiman, Spear and Hennessy, Js.

Submitted on briefs May 22—officially released September 24, 1996

*Elizabeth M. Inkster*, assistant public defender, with whom, on the brief, was *Joseph G. Bruckmann*, public defender, for the appellant (defendant).

*Judith M. Rossi*, assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan*, state's attorney, and *James Bernardi*, assistant state's attorney, for the appellee (state).

SPEAR, J. Our Supreme Court, in reversing this court's decision,[1] has determined that the defendant's claims on his motion to suppress are reviewable on appeal pursuant to Practice Book § 4003 (b).[2] On

---

[1] *State* v. *Piorkowski*, 236 Conn. 388, 672 A.2d 921 (1996).

[2] Practice Book § 4003 (b) provides in relevant part: "With the approval of the court, after a hearing to consider any objections thereto, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any motion made prior to the close of evidence, which motion must be specified in such written reservation. If the defendant prevails on appeal, the judgment shall be set aside and the defendant shall be allowed to withdraw the conditional plea of . . . nolo contendere after the case has been remanded to the trial court. . . . The court shall not accept a plea of guilty or nolo contendere pursuant to this subsection where the adverse determination of the specified motion would not have a significant impact on the disposition of the case in the trial court. The court shall also decline to accept such a nolo contendere or guilty plea where the record

remand, the Supreme Court has directed us to determine whether the trial court properly refused to suppress two statements that the defendant gave to police officers.

The defendant asserts that his first statement, given October 21, 1992, should be suppressed pursuant to General Statutes § 54-1c[3] because it was obtained in violation of the prompt arraignment requirements of General Statutes § 54-1g.[4] He claims that his second statement, given October 22, 1992, should be suppressed because it was obtained in the absence of the attorney who had earlier been appointed to represent him, in violation of his right to counsel under article first, § 8, of the constitution of Connecticut. We affirm the judgment of the trial court.

The record discloses the following factual and procedural history. The defendant was arrested on drug charges early in 1992 and thereafter was recruited as a confidential informant by the Norwalk police department. He informed the police that Tim Lee was involved in marijuana trafficking. During the ensuing investigation of Lee, the defendant arranged to purchase marijuana from Lee. That transaction was observed by an

available for review of the ruling upon the specified motion is inadequate for appellate review of the court's determination thereof."

[3] General Statutes § 54-1c provides: "Admissibility of confession. Any admission, confession or statement, written or oral, obtained from an accused person who has not been presented to the first session of the court, or on the day specified for arraignment under the provisions of section 54-1g, or who has not been informed of his rights as provided by section 54-1b or section 54-64b, shall be inadmissible."

[4] General Statutes § 54-1g provides in relevant part: "Time of arraignment. Violations of protective orders. (a) Any arrested person who is not released sooner or who is charged with a family violence crime as defined in section 46b-38a shall be promptly presented before the superior court sitting next regularly for the geographical area where the offense is alleged to have been committed. If an arrested person is hospitalized, or has escaped or is otherwise incapacitated, the person shall be presented, if practicable, to the first regular sitting after return to police custody."

officer of the Norwalk police department, but without the knowledge of the police, the defendant had also arranged to sell cocaine to Lee. Some time after that transaction, the defendant killed Lee during an argument over the cocaine sale.

The following facts relating to the defendant's statements were set out in *State* v. *Piorkowski*, 236 Conn. 388, 672 A.2d 921 (1996). "On approximately October 10, 1992, Lee's body was discovered in New Jersey. In the early morning of October 20, 1992, Norwalk Detective Robert DeLallo learned that Christine Thompson, a friend of Lee, had given New Jersey police a statement implicating the defendant in Lee's murder. At approximately 7:30 a.m. on October 20, DeLallo and other officers located the defendant in Norwalk and, during a frisk of the defendant for weapons, found drugs and drug paraphernalia on his person. The police arrested the defendant on drug charges, orally advised him of his *Miranda* rights, and brought him to the Norwalk police station at approximately 8 a.m.

"The defendant was not presented in court on the drug charges on October 20, but was held in the police department lockup while the police continued to investigate Lee's murder. At approximately 11 p.m., on October 20, the police secured an arrest warrant charging the defendant with Lee's murder. At approximately midnight on October 21, [Detective James] Saraceni and Detective Nelson Alicia awakened the defendant in his lockup cell. The defendant indicated that he wanted to talk with Saraceni, after which the detectives took the defendant to an interview room, where Saraceni informed him that the police had an arrest warrant for the defendant on a murder charge. Saraceni told the defendant that he would talk to him only after giving him the *Miranda* warnings and having him fill out a waiver of rights form. Saraceni read the waiver of rights form to the defendant, who did not sign the form. Sara-

ceni then interrogated the defendant in Alicia's presence. During the interrogation, the defendant spoke freely, giving a detailed statement implicating himself in Lee's murder.

"The detectives concluded their interrogation of the defendant at approximately 2 a.m. on October 21, 1992. Later that day, approximately twenty-six hours after his arrest on the drug charges, the defendant was arraigned in geographical area number twenty of the Superior Court on both the drug and murder charges; that court had been in session on October 20. A public defender was appointed to represent the defendant on both charges.

"At approximately 10:30 p.m. on October 21, DeLallo and Detective Charles Chrzanowski went to the home of Denise Van Valen, with whom the defendant lived, to ascertain whether she had any information regarding the murder of Lee. While they were in Van Valen's home, the defendant called her from the Bridgeport correctional center. Van Valen told the defendant that the detectives were there, and asked him if he wanted to talk to DeLallo. The defendant indicated that he did, and she handed the telephone to DeLallo. When the defendant asked DeLallo to come to the jail to speak to him, DeLallo told the defendant that he would try to see him at the jail the next day. When Van Valen visited the defendant at the jail on October 22, she learned that DeLallo had not yet visited the defendant. Later that day Van Valen called DeLallo and asked him why he had not yet visited the defendant.

"Although DeLallo was aware that the defendant was represented by an attorney on the murder charge, no call was placed to the public defender assigned to the defendant's case. After Van Valen's call to him on October 22, DeLallo spoke to assistant state's attorney James

Bernardi and state's attorney's inspector Phil O'Grady, in order to determine whether he could appropriately interview the defendant at the jail. Bernardi and O'Grady advised DeLallo that, if the defendant had initiated the contact with him and had requested to speak with him, it was permissible to interview him regarding the murder charge. Having obtained approval from the state's attorney's office, DeLallo and Alicia visited the defendant at the jail on the evening of October 22. Neither the detectives nor the state's attorney's office informed the defendant's counsel of the detectives' intention to interview the defendant. The detectives read him a *Miranda* rights and waiver form, which he initialed and signed. They then interviewed him about the Lee murder, and he gave another oral statement." Id., 393–95.

The defendant moved to suppress the October 21 statement on the grounds that (1) he had not waived his *Miranda*[5] rights and (2) the statement was the product of a violation of his right to a prompt arraignment, as provided under § 54-1c. In the same motion, the defendant moved to suppress the October 22 statement on the grounds that (1) the statement was the fruit of the illegal October 21 interrogation, and (2) the statement was taken in violation of his right to counsel.[6]

The trial court denied the motion to suppress, concluding that (1) the defendant had knowingly and intelligently waived his *Miranda* rights prior to making the October 21 statement, (2) the defendant's arraignment was timely because § 54-1g requires arraignment no later than the next court day following an arrest, (3)

---

[5] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[6] The motion printed in the record claims a violation of the sixth amendment to the United States constitution. Apparently, the motion was thereafter amended because the trial court resolved only a Connecticut constitutional claim and, on appeal, the parties argued only the Connecticut constitutional claim.

the October 22 statement was not invalid because the defendant had validly waived his rights on October 21, and (4) the defendant's right to counsel pursuant to article first, § 8, of the Connecticut constitution was not violated because that section does not require that counsel be present for a valid postarraignment waiver of the right to counsel.

The defendant entered a conditional plea of nolo contendere to the charge of murder with the agreement of the state and the approval of the court. The defendant expressly conditioned his plea on the right to vacate it if his appeal of the trial court's denial of the motion to suppress was successful with respect to either or both of the statements.

I

The trial court correctly noted that the defendant's prompt presentment claim made pursuant to § 54-1g is controlled by three cases. *State* v. *Vollhardt*, 157 Conn. 25, 39, 244 A.2d 601 (1968); *State* v. *Darwin*, 155 Conn. 124, 133–34, 230 A.2d 573 (1967), rev'd on other grounds, 391 U.S. 346, 88 S. Ct. 1488, 20 L. Ed. 2d 630 (1968); *State* v. *Hardy*, 11 Conn. App. 238, 239, 526 A.2d 562 (1987).

In *Darwin*, the defendant was arrested at about 9:40 a.m. on Friday, December 6, 1963. General Statutes § 54-1b provided at that time that any person arrested be "presented before the circuit court session next held in the circuit where the offense is alleged to have been committed." General Statutes § 54-1c provided at that time that "[a]ny admission, confession or statement, written or oral, obtained from an accused person who has not been so presented to the first session of the [circuit] court . . . shall be inadmissible." The Circuit Court convened at 10 a.m. on December 6, 1963, but was not in session on Saturday, December 7 or Sunday, December 8. Darwin was presented at the court session on Monday, December 9, 1963. Darwin claimed that

because he was arrested at 9:40 a.m. on December 6, the next session of the Circuit Court was convened at 10 a.m. that day. He claimed that because he was not presented on December 6, his statement made between his arrest and his arraignment on December 9 should be suppressed. The Supreme Court affirmed the trial court's ruling that the "next session" of the Circuit Court meant the regular session next to be held, excluding any session held on the day of the arrest. *State* v. *Darwin*, supra, 155 Conn. 134.

In *Vollhardt*, the defendant did not claim that there was a delay in his presentment to the Circuit Court, but rather that his statements made after his arrest and before arraignment should be suppressed because §§ 54-1b and 54-1c, as then constituted, rendered inadmissible any confession obtained before an accused had been warned of his constitutional rights in court. In rejecting this claim, our Supreme Court stated: "We cannot agree with this construction. The language of the statutes is clear and unambiguous, and, accordingly, their intent is to be determined from the language used. . . . The purpose of the statutes is to ensure that an accused is presented before the session of the Circuit Court next held, *which in this case would be the day following his arrest*, at which time he must be advised of his rights before he is put to plea." (Citations omitted; emphasis added.) *State* v. *Vollhardt*, supra, 157 Conn. 38–39.

In *Hardy*, this court affirmed the trial court's refusal to suppress a statement taken after a defendant's arrest at 7:11 a.m. on September 19, 1985, and prior to the defendant's arraignment on the next regularly scheduled court date, September 20, 1985. We stated that "our Supreme Court [in *Darwin*] rejected a claim of untimely arraignment under circumstances nearly identical to those in this case. See also *State* v. *Vollhardt*, [supra, 157 Conn. 39]. The trial court, in refusing to

suppress the defendant's statements, properly applied the holding in *Darwin*." *State* v. *Hardy*, supra, 11 Conn. App. 239–40.

The defendant, while acknowledging these three cases, argues that the change in § 54-1g from a requirement that an arrested person be "presented before the circuit court session next held" to the present language that an arrested person "shall be *promptly* presented before the superior court sitting next regularly" vitiates the holdings of *Darwin* and *Vollhardt*. (Emphasis added.) He further claims that *Hardy* should not be deemed authoritative because, although the defendant's claim was made under the current version of the statute, counsel failed to bring to the court's attention the change in the language.

We agree with the trial court's statement that "the defendant loads the term 'promptly' with too much freight." Unlike the decisions in *Darwin* and *Vollhardt*, our decision in *Hardy* came after the legislature added the word "promptly" to the statutory provisions in effect at the time of arraignment. In that case, we cited *Darwin* and *Vollhardt* and concluded that the addition of the word "promptly" did not diminish or overrule those two decisions. Moreover, although the legislature inserted the word "promptly" in the statute, § 54-1g still requires presentment "before the superior court *sitting next regularly* for the geographical area where the offense is alleged to have been committed. . . ." (Emphasis added.) The use of the word "promptly," therefore, does not change the statute's essential meaning, specifically, that the defendant must be brought before the next session of the court, excluding any session held on the day of his arrest. Accordingly, we conclude that *Darwin*, *Vollhardt* and *Hardy* mandate that we affirm the trial court's denial of the defendant's motion to suppress on this ground.

## II

The defendant claims that article first, § 8, of the Connecticut constitution precludes the admission of his October 22 statement given in the absence of counsel during a police interview that he initiated. He asserts that because he had previously been arraigned on the murder charge and was represented by counsel on that charge, he could not validly waive his right to counsel without the presence of counsel.[7]

We begin our analysis by noting that the defendant does not challenge the trial court's findings that he initiated the police interview or that he validly waived his *Miranda* rights. We also note that the trial court found that the defendant had six prior convictions, was an informant and, consequently, was familiar with his rights as a result of these prior involvements.

The defendant claims that the state constitutional right to counsel has significance independent of its sixth amendment federal counterpart.[8] Relying on *State* v. *Geisler*, 222 Conn. 672, 610 A.2d 1225 (1992), the defendant asserts his state constitutional claim using the following tools of analysis: (1) historical background, (2) holdings and dicta of the Supreme and Appellate Courts of Connecticut, (3) decisions of other states, (4) policy and sociological data, and (5) federal precedent. The defendant contends that a proper consideration of the *Geisler* factors should lead us to adopt, as a matter of state constitutional law, the prophylactic rule set forth in *People* v. *Settles*, 46 N.Y.2d 154, 385 N.E.2d 612, 412 N.Y.S.2d 874 (1978). In *Settles*, the New York Court of Appeals decided that under the state constitution, a

---

[7] The defendant, although disagreeing with the state's contention that this claim is foreclosed by federal constitutional law, expressly limits his claim to the Connecticut constitution.

[8] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

proper postindictment waiver of counsel may occur only in the presence of counsel.

We agree with the defendant that Connecticut has a long tradition of supporting the right to counsel in criminal matters. Nevertheless, we conclude that *State* v. *Jones*, 205 Conn. 638, 534 A.2d 1199 (1987), precludes us from adopting the per se rule that the defendant advances. Our view of *Jones* also dispenses with the need to analyze the *Geisler* factors.

In *Jones*, the defendant asked a police detective to come to his cell and talk to him, even though the defendant had been arraigned and had a right to counsel.[9] After a valid waiver of his *Miranda* rights, the defendant gave an incriminating statement to the detective. The trial court admitted the statement into evidence at trial. On appeal, the defendant claimed that his federal and state constitutional rights to counsel were violated by the admission of the statement. Our Supreme Court concluded that the defendant's federal and state constitutional rights to counsel and to remain silent were not violated when, "after the initiation of adversarial judicial criminal proceedings, a police officer, with the permission of the prosecuting attorney, met with him and interrogated him." Id., 641–42.

In *Jones*, the court addressed the defendant's state constitutional claim. "The defendant also asserts the denial of his state constitutional right to counsel and denies having waived that right. . . . We make only two observations about the defendant's discussion of the state constitutional issue in his reply brief. First, he seems to claim that we ought to require a higher standard of waiver for *Miranda* rights than heretofore. Yet, he elucidates no analysis in that regard except to say that '[i]deally,' waiver should be in the presence of

---

[9] We must note that in *Jones*, the defendant had been appointed counsel, but for bond purposes only.

a neutral magistrate or the defendant's lawyer and that '[m]inimally,' it should be executed unambiguously and preserved on tape, videotape or in writing. We decline to take that step in this case. Second, the circumstances of this case, including the conduct of the defendant and the police, are such that the rights claimed to have been violated were 'scrupulously honored' under even a more liberal standard than that required by the United States constitution." Id., 641–42 n.3.

In deciding *People* v. *Settles*, supra, 46 N.Y.2d 164, the New York Court of Appeals noted that "[t]he fact that [the] defendant did not have an attorney appointed at the time the police sought their waiver is a distinction without a difference as far as the right to counsel is concerned. The right to counsel is not dependent upon the speed with which an attorney can be retained nor does it pivot on the length of police delay in arraigning an indigent defendant so that counsel may be appointed. To ground an indicted defendant's right to counsel upon such fortuitous criteria is to debase that right into nothing more than a race for the wary. . . . Of course, a postindictment defendant may knowingly and intelligently waive his right to counsel at any stage of the judicial proceedings . . . . But no knowing and intelligent waiver of counsel may be said to have occurred without the essential presence of counsel." (Citations omitted.)

The defendant asks us to incorporate into our interpretation of article first, § 8, the *Settles* per se rule that one may not waive counsel without counsel's presence after the initiation of adversarial judicial proceedings. We conclude that to do so would conflict with the approach of our Supreme Court in *State* v. *Jones*, supra, 205 Conn. 638. In *Jones*, our Supreme Court did not adopt a bright line rule that once the right to counsel attaches, there can be no valid waiver of that right without the presence of counsel. In rejecting the defend-

ant's claim, the court considered all of the circumstances and concluded that where the defendant, after being arraigned and in the absence of counsel, initiated the police interview, waived his *Miranda* rights, and gave a statement to a police officer, there was no violation of his state constitutional right to counsel. Id., 641–42 n.3.

The judgment is affirmed.

In this opinion O'CONNELL, FOTI, LANDAU, HEIMAN and HENNESSY, Js., concurred.

LAVERY, J., dissenting. I respectfully disagree with part II of the majority opinion in which the majority concludes that *State* v. *Jones*, 205 Conn. 638, 534 A.2d 1199 (1987), precludes this court from adopting the holding of the New York Court of Appeals in *People* v. *Settles*, 46 N.Y.2d 154, 385 N.E.2d 612, 412 N.Y.S.2d 874 (1978). I would conclude that article first, § 8, of the Connecticut constitution requires that a valid postinformation waiver of the right to counsel may occur only in the presence of counsel.

In *Jones*, the defendant first raised the state constitutional claim in his reply brief. The defendant elucidated no state constitutional analysis except to say that " '[i]deally,' waiver should be in the presence of a neutral magistrate or the defendant's lawyer and that '[m]inimally,' it should be executed unambiguously and preserved on tape, videotape or in writing." *State* v. *Jones*, supra, 205 Conn. 641–42 n.3. In the present case, the defendant has provided this court with a detailed state constitutional analysis that addresses each of the tools as outlined in *State* v. *Geisler*, 222 Conn. 672, 610 A.2d 1225 (1992). Our courts have made it abundantly clear that we will decline to review state constitutional claims that are not adequately briefed. *State* v. *Faust*, 237 Conn. 454, 465 n.10, 678 A.2d 910 (1996); *State* v. *Van Der Werff*, 8 Conn. App. 330, 335 n.3, 515 A.2d

380, cert. denied, 201 Conn. 808, 513 A.2d 154 (1986). I believe that, in light of the full analysis provided by the parties, *Jones* does not preclude this court from addressing the defendant's state constitutional claim.

In *State* v. *Stoddard*, 206 Conn. 157, 164–66, 537 A.2d 446 (1988), a case involving police interference with counsel's access to a custodial suspect, our Supreme Court discussed the historical significance of the right to counsel, even before that right attained federal constitutional importance. "When the customary right to counsel was formally incorporated into the Connecticut constitution in 1818, 'the advice and services of counsel were regarded as crucial to a criminal defendant at any time, especially given the inability of a defendant to testify in Connecticut in 1818.' *State* v. *Davis*, [199 Conn. 88, 99–100, 506 A.2d 86 (1986)]. More contemporary developments suggest that this state's commitment to securing the right to counsel has not diminished since 1818. Not only was Connecticut 'the first state to adopt the public defender system'; *State* v. *Hudson*, 154 Conn. 631, 635, 228 A.2d 132 (1967); but the right to counsel 'was secured to criminal defendants in this state long before the mandate of *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 [(1962) (holding that the fourteenth amendment incorporated the sixth amendment right to counsel)] . . . .' *Spring* v. *Constantino*, 168 Conn. 563, 566–67 n.2, 362 A.2d 871 (1975). The United States Supreme Court has turned to the historical experience of Connecticut in expanding the right to counsel under the federal constitution. *Faretta* v. *California*, 422 U.S. 806, 827, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *Powell* v. *Alabama*, [287 U.S. 45, 62–63, 53 S. Ct. 55, 77 L. Ed. 158 (1932)]." *State* v. *Stoddard*, supra, 165. "It is clear, from this rich history, that the fundamental right to counsel is elevated to the highest order." *State* v. *Hamilton*, 228 Conn. 234, 260, 636 A.2d 760 (1994) (*Berdon, J.*, dissenting).

In *Stoddard*, the Supreme Court specifically held that a custodial suspect must be informed promptly of timely efforts by counsel to render pertinent legal assistance. "Armed with that information, the suspect must be permitted to choose whether he wishes to speak with counsel, in which event interrogation must cease, or whether he will forego assistance of counsel, in which event counsel need not be afforded access to the suspect." *State* v. *Stoddard*, supra, 206 Conn. 166–67.

Once the suspect is charged with a crime, however, the character of the police function shifts from investigatory to accusatory. "For this reason, the warnings which are sufficient to comply with the strictures against testimonial compulsion do not satisfy the higher standard with respect to a waiver of the right of counsel. Prior to [the information], there may be valid reasons why an uncounseled suspect might wish to deal with the police. He may nourish the hope, however vain, that he can avoid any legal entanglement by simply clearing up a few loose ends. Alternatively, he may feel that by getting into the good graces of the police as an informer he might be able to avoid [being charged] and trial . . . ." (Citation omitted.) *People* v. *Settles*, supra, 46 N.Y.2d 163.

I would conclude that the historical significance of counsel in Connecticut mandates an independent state constitutional doctrine providing that a criminal defendant who has been charged, is in custody, has been arraigned and has been appointed counsel may not waive his right to counsel for purposes of police interrogation unless he does so in the presence of counsel. Although a defendant may knowingly and intelligently waive his right to counsel at any stage of the judicial proceedings, no knowing and intelligent waiver of appointed counsel may be said to have occurred without the essential presence of counsel.

Accordingly, I respectfully dissent.