******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v*. VICTOR CRESPO
(SC 19242)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald and Robinson, Js.

*Argued December 1, 2014—officially released May 19, 2015*

*Megan L. Weiss*, assistant public defender, with whom was *Martin Zeldis*, assigned counsel, for the appellant (defendant).

*Leonard C. Boyle*, deputy chief state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Nicholas J. Bove, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. The primary issue presented by this appeal is whether General Statutes § 54-1c,[1] which renders inadmissible "[a]ny . . . statement . . . obtained from an accused person who has not been presented to the first session of the court" following his or her arrest, applies to a statement elicited from an accused who, although not presented to the first session of court, provided the statement before the expiration of that first court session, when his presentment still would have been timely. The defendant, Victor Crespo, was charged with one count each of the crimes of carrying a pistol without a permit in violation of General Statutes (Rev. to 2009) § 29-35 (a),[2] having a weapon in a motor vehicle without a permit in violation of General Statutes (Rev. to 2009) § 29-38 (a), and possession of an assault weapon in violation of General Statutes (Rev. to 2009) § 53-202c (a). To establish the defendant's guilt with respect to these offenses, the state relied, in part, on a written confession that the defendant had given to the police following his arrest. After a trial, the jury found the defendant guilty as charged, and the trial court rendered judgment in accordance with the jury verdict.[3] The Appellate Court affirmed the trial court's judgment; *State* v. *Crespo*, 145 Conn. App. 547, 582, 76 A.3d 664 (2013); and we granted the defendant's petition for certification to appeal, limited to two issues. First, did the Appellate Court correctly conclude that the trial court properly rejected the defendant's claim under § 54-1c that he was entitled to the suppression of his written statement because he was not presented to the first session of the court and, second, was the evidence sufficient to establish that he had carried a pistol in violation of § 29-35 (a) even though the pistol was discovered in the defendant's vehicle. See *State* v. *Crespo*, 310 Conn. 953, 953–54, 81 A.3d 1181 (2013). With respect to the first issue, we agree with the Appellate Court and the trial court that § 54-1c did not bar the state's use of the defendant's written statement because § 54-1c is inapplicable when, as in the present case, the statement is elicited prior to the expiration of the first session of court. With respect to the second issue, we conclude that the evidence was sufficient to support a jury finding that the defendant carried the pistol in violation of § 29-35 (a). We therefore affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts that the jury reasonably could have found. "On January 18, 2010, at approximately 10:45 p.m., Officer Hugo Stern of the Bridgeport Police Department received a tip from a confidential informant (informant) that [he] had been approached by a man (seller) in the parking lot of the T Market in [the city of] Bridgeport offering to sell the informant an Uzi-type

pistol. The informant described the seller as a 'Hispanic male' with a '[s]lender build, approximately [five foot, seven inches tall], [wearing] a black jacket, blue jeans, and . . . a multicolor knitted hat . . . .' The informant stated that the gun was wrapped in a black plastic garbage bag. The informant told Stern that the seller had removed the gun from a white van . . . [that] was parked in the parking lot of the T Market.[4] Armed with this information, Stern called Officer Frank Delbouno of the Bridgeport Police Department, requesting that Delbouno meet him at the T Market. Stern arrived at the T Market approximately ten minutes later to investigate the informant's tip.

"Upon his arrival at the T Market, Stern immediately saw the defendant standing a few feet away from a white van, which was parked in the parking lot of the T Market. Satisfied that the defendant matched the informant's description of the seller, Stern exited his police cruiser, drew his weapon and ordered the defendant to raise his hands; the defendant complied. After conducting a patdown search of the defendant, which did not produce any weapons, Stern ordered the defendant to lie on the ground; the defendant again complied. Thereafter, Delbouno arrived at the scene to provide backup. Because the side door to the van was completely open, Stern was able to see a black plastic garbage bag inside it, which was similar to that which the informant had described. Stern ordered Delbouno to seize the bag, which he did. Inside the bag, Delbouno found a loaded, semiautomatic Uzi-type pistol.

"While Delbouno was securing the gun, the defendant volunteered, without interrogation, that the van 'was his vehicle . . . .' Thereafter, Stern arrested the defendant. After Stern placed the defendant in the backseat of his police cruiser, the defendant voluntarily stated, again unprompted by interrogation, that 'he was holding the weapon for Fats, who was supposed to meet him later . . . in exchange for some heroin folds.' The informant subsequently appeared on the scene and identified the defendant as the man who had attempted to sell him the gun. The informant further confirmed that the defendant's van was the vehicle from which the seller had retrieved the gun. The defendant was then transported to Bridgeport police headquarters.

"At approximately 10 a.m. the following morning, January 19, 2010, Detective Paul Ortiz of the Bridgeport Police Department approached the defendant and asked him to make a statement. The defendant agreed and executed a waiver of rights, at which time Ortiz advised him of his *Miranda*[5] rights. . . . The defendant then provided a written statement to Ortiz in which he stated that he had agreed to 'hold the firearm' in exchange for heroin." (Citation omitted; footnotes altered.) *State* v. *Crespo*, supra, 145 Conn. App. 550–52.

After the defendant was convicted of carrying a pistol

without a permit, having a weapon in a motor vehicle without a permit, and possession of an assault weapon, he appealed to the Appellate Court, claiming, inter alia, that the trial court improperly had declined to suppress his written statement to Ortiz in accordance with § 54-1c and that the evidence was insufficient to support his conviction of carrying a pistol without a permit.[6] The Appellate Court rejected these claims, and we granted the defendant's petition for certification to appeal, limited to those issues.

## I

We first address the defendant's claim that, contrary to the determination of the Appellate Court, the trial court improperly denied his motion to suppress his written statement to Ortiz pursuant to § 54-1c.[7] We are not persuaded by the defendant's claim.[8]

As we indicated, the defendant was arrested in the late evening hours on Monday, January 18, 2010. The defendant contends, and the state does not dispute, that, under § 54-1c, he should have been "presented to the first session of the court" after his arrest, which was held on January 19, 2010. General Statutes § 54-1c. The parties also agree that the defendant was not presented in court until January 20, 2010. The defendant claims that the written statement that he gave to Ortiz at about 10 a.m. on January 19, 2010, was inadmissible because the statute clearly and unambiguously provides that "[a]ny . . . *statement*" made by a defendant who has not been presented to the court in a timely manner must be suppressed.[9] (Emphasis added.) General Statutes § 54-1c. The state contends that the suppression remedy of § 54-1c applies only to statements that an accused person makes *after* the time that the person should have been presented in court pursuant to § 54-1c. We agree with the state.

The meaning of § 54-1c is a question of statutory interpretation over which our review is plenary. See, e.g., *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 399, 999 A.2d 682 (2010). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . In seeking to determine [the] meaning [of a statute], General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation

and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citations omitted; internal quotation marks omitted.) Id.

We begin our analysis with the language of the statute. Section 54-1c provides in relevant part that "[a]ny . . . statement . . . obtained from an accused person who has not been presented to the first session of the court, or on the day specified for arraignment under the provisions of section 54-1g . . . shall be inadmissible." In the defendant's view, although his written statement to Ortiz was obtained *before* he should have been presented in court, the statement nevertheless is inadmissible because the statute clearly and unambiguously refers to "*any* . . . statement . . . ." (Emphasis added.) General Statutes § 54-1c. Because, however, the phrase "who has not been presented to the first session of the court, or on the day specified for arraignment under the provisions of section 54-1g" modifies the term "an accused person," the better reading of the statute is that only a statement obtained from a person who, *at the time that the statement is obtained*, "has not been presented" to court in a timely manner, shall be inadmissible. Put another way, because the legislature used the past tense in the phrase "has not been presented," this phrase evinces an intent that the violation already must have occurred when the statement is obtained in order for the statute to apply. Moreover, under the interpretation urged by the defendant, the phrase "has not been presented" effectively means "is not presented," and that is not the language that the legislature used.

Nevertheless, the defendant's interpretation of the statutory language is a plausible one, and, consequently, the statute is not plain and unambiguous within the meaning of § 1-2z.[10] We therefore consider the legislative history of § 54-1c, the circumstances surrounding its enactment, the legislative policy it was designed to implement, and its relationship to existing legislation and common-law principles governing the same general subject matter. E.g., *Thomas* v. *Dept. of Developmental Services*, supra, 297 Conn. 399. As the Appellate Court noted in this case, "[t]he legislative history of § 54-1c reveals that its purpose was to promote 'the right of the accused to have counsel, which would prevent the police from incommunicado holding. That [is, the police] would have the right for at least [twenty-four hours] for proper interrogation of the accused, but would have to present [the accused] to the Circuit Court or to a Superior Court within the next court day.'[11] 10 H.R. Proc., Pt. 5, 1963 Sess., p. 1728, remarks of Representative Robert J. Testo. Explaining the bill [that became General Statutes (Cum. Supp. 1963) § 54-1c], Representative Robert Satter stated: 'It is a bill that gives the [right] to counsel at the critical moment when

a person most needs counsel, namely at the point [shortly after being] arrested, and where he is being brought for an arraignment.' Id., p. 1730. Speaking in support of the bill, Representative F. Timothy McNamara stated: '[T]his bill places the [s]tate of Connecticut in line with the rules that the [f]ederal [c]ourts [have] placed on the [f]ederal authorities.' Id., p. 1732." (Footnote added.) *State* v. *Crespo*, supra, 145 Conn. App. 564–65.

Because § 54-1c was intended to embody then existing federal rules, we look to those rules for interpretive guidance. When § 54-1c was enacted in 1963; see Public Acts 1963, No. 126, § 3; federal law required in a wide variety of contexts that arrestees be presented in court without delay. See, e.g., *Mallory* v. *United States*, 354 U.S. 449, 451–52, 77 S. Ct. 1356, 1 L. Ed. 2d 1479 (1957) (rule 5 [a] of Federal Rules of Criminal Procedure then in effect required officer who arrested person to "take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States" [internal quotation marks omitted]); *McNabb* v. *United States*, 318 U.S. 332, 342–43, 63 S. Ct. 608, 87 L. Ed. 819 (1943) (taking note of various rules and statutes imposing "impressively pervasive requirement of criminal procedure" that arrested person be promptly taken before committing authority). The purpose of this procedural requirement was to prevent "those reprehensible practices known as the 'third degree' which, though universally rejected as indefensible, still find their way into use. It aims to avoid all the evil implications of secret interrogation of persons accused of crime." (Internal quotation marks omitted.) *Mallory* v. *United States*, supra, 452–53; see *McNabb* v. *United States*, supra, 344 (requirement that authorities promptly must show legal cause for detaining arrested person "outlaws easy but self-defeating ways in which brutality is substituted for brains as an instrument of crime detection"); see also *Corley* v. *United States*, 556 U.S. 303, 308, 129 S. Ct. 1558, 173 L. Ed. 2d 443 (2009) ("the plain purpose of the requirement that prisoners should promptly be taken before committing magistrates was to check resort by officers to secret interrogation of persons accused of crime" [internal quotation marks omitted]); *Corley* v. *United States*, supra, 308 ("delay for the purpose of interrogation is the epitome of unnecessary delay" [internal quotation marks omitted]). The remedy for a violation of this procedural rule was "to render inadmissible incriminating statements elicited from defendants during a period of unlawful detention." *Mallory* v. *United States*, supra, 453; cf. *McNabb* v. *United States*, supra, 344–45. When, however, a confession was not the result of an illegal detention but was obtained under circumstances that did not violate any legal right of the defendant, the subsequent

violation of the rule requiring prompt presentment did not require suppression of the confession. See, e.g., *United States* v. *Mitchell*, 322 U.S. 65, 70, 64 S. Ct. 896, 88 L. Ed. 1140 (1944) (suppression of defendant's confession shortly after arrest was not required because "there was no disclosure induced by illegal detention . . . [and] no evidence was obtained in violation of any legal rights," even though defendant subsequently was held illegally for eight days before he was presented for arraignment); see also *Culombe* v. *Connecticut*, 367 U.S. 568, 599 n.50, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961) ("confessions made during the period immediately following arrest and before delay becomes unlawful are not to be excluded under [*McNabb* and *Mallory*]").

Having reviewed the language of § 54-1c, its legislative history, and the principles of federal law that it was intended to embody, we agree with the Appellate Court that a statement is not inadmissible under the statute merely because, *after* the statement was obtained, the defendant was not presented in court in a timely manner. The primary evil that § 54-1c was intended to avoid is the lengthy detention of an accused person without being presented in court for the purpose of preventing the person from being advised of his constitutional rights under the fifth and sixth amendments and, ultimately, for the purpose of obtaining a confession from that person.[12] We see no evidence to indicate that the legislature intended to deprive the state of the use of a voluntary, knowing and intelligent confession that was not the product of such illegal conduct. Cf. *State* v. *Blackman*, 246 Conn. 547, 553, 716 A.2d 101 (1998) ("evidence must be suppressed if it is found to be the fruit of *prior* police illegality" [emphasis added; internal quotation marks omitted]); *State* v. *Colvin*, 241 Conn. 650, 657, 697 A.2d 1122 (1997) (evidence must be suppressed when it was "in some sense the *product* of illegal government activity" [emphasis added; internal quotation marks omitted]). Accordingly, the Appellate Court correctly determined that § 54-1c did not bar the admissibility of the defendant's statement when it was obtained before the defendant should have been presented in court.

## II

We next address the defendant's claim that the evidence was insufficient to establish that he carried a pistol within the meaning of § 29-35 (a). Specifically, he contends that the only evidence relating to the carrying element of § 29-35 (a) was his statement that he was holding a pistol for Fats and the fact that it was found in his van. He further contends that there was "no testimony, either contested or uncontested, that the weapon was ever physically on the person of the defendant." The state contends that Stern's testimony that the defendant told him that "he was holding this weapon for a guy that he knew named Fats that he met in Greene

Homes,"[13] and the evidence that the pistol was found in the defendant's van, constituted sufficient evidence to support the jury's finding that the defendant had carried the pistol.[14] We agree with the state that the evidence was sufficient for the jury to find that the defendant had carried the pistol.

The following additional facts and procedural history are relevant to this claim. Stern testified at trial that the defendant had stated to Stern at the time of his arrest that "he was holding this weapon for a guy that he knew named Fats that he met in Greene Homes . . . building four. . . . [H]e was holding the weapon for Fats, who was supposed to meet him later on . . . in exchange for some heroin folds." On the morning after his arrest, the defendant gave a written statement to Ortiz in which he stated that he owned the white van in which the pistol had been found. He also stated that, at approximately 6:30 p.m., presumably the previous evening, Fats had asked him to hold the pistol for him in exchange for heroin but that the defendant had become impatient and gone to the T Market to see if the owner of the market had any interest in the pistol.

After the state rested its case, defense counsel moved for a judgment of acquittal on the charge of carrying a pistol without a permit on the ground that the state had failed to prove beyond a reasonable doubt that the defendant carried the pistol on his person. The trial court denied the motion, explaining that "the state has presented sufficient evidence . . . to meet its burden of proving that [the defendant] at some point in time did carry on his person a pistol without a permit . . . and that he carried it in a place other than his home or place of business." The Appellate Court upheld the trial court's ruling, stating that "the jury reasonably could have found that, in the course of holding the pistol for Fats, as he repeatedly claimed to have done, the defendant had carried the pistol [on] his person by holding it in his hands and moving it from the Greene [Homes residential complex] to the van and wrapping it in a black plastic bag before placing it in the van." *State* v. *Crespo*, supra, 145 Conn. App. 576.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions

need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 402–403, 902 A.2d 1044 (2006).

As we indicated; see footnote 14 of this opinion; the trial court in the present case instructed the jury that the term "carry," as used in § 29-35 (a), means "to have or to bear upon or about one's person." It further instructed the jury that "there must be proof that the defendant had knowledge that he was knowingly carrying a pistol on his person" and that "knowing or conscious contact with an item, albeit fleeting and momentary, is sufficient to constitute possession."[15] As we also explained, the evidence showed that, after Stern arrested the defendant, the defendant voluntarily stated multiple times that Fats had given him the pistol at the Greene Homes residential complex and that he was "holding" the pistol for Fats. In addition, the defendant's written statement indicated that he owned the van in which the pistol was found, that he had become impatient with Fats and that he had gone to the T Market to see if the owner of the market was interested in the pistol. This evidence reasonably supports a finding that the defendant drove the van from the Greene Homes residential complex to the T Market and that he knew the pistol was in the van, which, in turn, would support

an inference that the defendant placed the pistol in the van himself. Moreover, the evidence that the pistol was in a black garbage bag at the time of the defendant's arrest would support a finding that either the pistol was in the bag when the defendant received it from Fats, in which case the jury reasonably could have inferred that the defendant opened the bag to determine exactly what was in it before deciding to offer the pistol to the owner of the T Market, or that the pistol was not in the bag when the defendant received it, in which case the jury reasonably could have inferred that he must have placed it in the bag himself. Accordingly, the jury reasonably could have inferred from the evidence that the defendant had placed the pistol in the van himself, or at least that he had some physical contact with the pistol at some point between the time that Fats asked him to hold it and the time of the defendant's arrest. See, e.g., *State* v. *Calabrese*, supra, 279 Conn. 402 ("[i]f it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven" [internal quotation marks omitted]). Although it is theoretically possible that someone other than the defendant placed the pistol in the defendant's van and that the defendant never had even "fleeting and momentary" contact with it during the four hours that he was holding it for Fats, the jury was not required to accept a mere possible hypothesis of innocence but was entitled to rely on its common sense and experience in drawing inferences from the evidence. See, e.g., *State* v. *Sivri*, 231 Conn. 115, 135, 646 A.2d 169 (1994) (once jury has determined that "the hypothesis or hypotheses of innocence posed by the defendant are no more than possible as opposed to reasonable . . . that jury determination is entitled to deference on appeal" [citation omitted; internal quotation marks omitted]); see also *State* v. *Winot*, 294 Conn. 753, 768, 988 A.2d 188 (2010) (jury is entitled to rely on common sense and experience). Accordingly, the Appellate Court correctly determined that the state's evidence was sufficient to establish beyond a reasonable doubt that the defendant had carried the pistol in violation of § 29-35 (a).

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] General Statutes § 54-1c provides: "Any admission, confession or statement, written or oral, obtained from an accused person who has not been presented to the first session of the court, or on the day specified for arraignment under the provisions of section 54-1g, or who has not been informed of such person's rights as provided by section 54-1b or 54-64b, shall be inadmissible."

[2] General Statutes (Rev. to 2009) § 29-35 (a) provides in relevant part: "No person shall carry any pistol . . . upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ."

Hereinafter, all references to § 29-35 are to the 2009 revision.

[3] The trial court imposed a total effective sentence of ten years imprisonment.

[4] Stern testified at trial that the informant had told him that "an individual at the T Market . . . showed him a weapon described as [an] Uzi type."

Stern further explained that the individual "brought [the informant] to the back of the store and had a weapon in a black plastic garbage bag," and that the individual "opened up the . . . garbage bag and showed [the informant] the Uzi type weapon." Finally, Stern testified that the informant was at the scene of the arrest and positively identified the defendant as the person who had showed him the weapon. Stern's testimony about the informant's statements to him was the only evidence presented to the jury concerning the defendant's actions between the time that he arrived at the T Market and the time of his arrest. The court, however, issued the following limiting instruction with respect to this testimony: "That evidence is hearsay and is not admitted to prove anything that the . . . informant said is true, and you may not consider that testimony in any way whatsoever as proof that the defendant is guilty of any part of any of the crimes charged. That testimony was allowed for the limited purpose of explaining why . . . Stern did what he said he did on [January 18, 2010], for example, why he went to the location in question and why he acted in the manner described by his other testimony, but not why he arrested [the defendant]." Thus, the jury could not consider Stern's testimony about what the informant told him as proof of the defendant's guilt.

[5] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[6] In the Appellate Court, the defendant also claimed that the trial court improperly had denied his motion (1) to suppress evidence related to his possession of the pistol because the police lacked probable cause to search his van; *State* v. *Crespo*, supra, 145 Conn. App. 553; (2) to suppress his oral statement to Stern on the ground that Stern's testimony was unreliable; see id., 560–61; (3) for the disclosure of the identity of the informant; id., 566–67; and (4) for a mistrial on the ground of alleged judicial misconduct stemming from the trial court's criticism of defense counsel before the jury. Id., 576. The Appellate Court rejected all of these claims, and the defendant has not renewed them on appeal to this court.

[7] The defendant did not claim in the trial court that the oral statement that he gave to Stern at the time of his arrest also should be suppressed pursuant to § 54-1c. Having failed to raise that claim in the trial court, the defendant has not raised it on appeal.

[8] As the Appellate Court noted in its decision, although the defendant raised his claim pursuant to § 54-1c in the trial court, that court did not articulate the basis for its rejection of that claim. See *State* v. *Crespo*, supra, 145 Conn. App. 562 n.7. The Appellate Court concluded that the claim was reviewable because it involved a pure question of law and that the record was adequate for review. Id. The state does not challenge that conclusion on appeal to this court.

[9] The Appellate Court concluded that § 54-1c renders a defendant's statement inadmissible both when the statement was obtained after the time that the defendant should have been presented to court and when the statement was obtained before that time but the process of obtaining it caused a delay in presentment, such that the defendant was not presented to the first session of the court. *State* v. *Crespo*, supra, 145 Conn. App. 566 n.8. The Appellate Court also stated that "the defendant has not raised a claim that Ortiz' interrogation of him led ultimately to the failure of the state to present him to the court for arraignment in accordance with § 54-1c." Id. On appeal to this court, the defendant does not dispute that he did not raise this claim in the Appellate Court. The defendant does dispute, however, the state's contention that the defendant gave his statement to Ortiz "well before" the time that he should have been presented in court. He contends, contrary to the state, that the evidence shows that it is likely that the process of obtaining the written statement prevented his presentment in court on January 19, 2010. Because the defendant failed to raise this claim distinctly in the trial court, however, it was not preserved for review. Moreover, because there is no factual finding with respect to this issue, the record is inadequate for review.

[10] The defendant notes that, in *State* v. *Vollhardt*, 157 Conn. 25, 38, 244 A.2d 601 (1968), we indicated that the language of General Statutes (Cum. Supp. 1963) § 54-1c is "clear and unambiguous . . . ." The defendant in *Vollhardt* had claimed that the intent of General Statutes (Cum. Supp. 1963) § 54-1c and General Statutes (Cum. Supp. 1963) § 54-1b, which required that a defendant be advised of certain constitutional rights at the time of arraignment, before being "put to plea," was "to render inadmissible any confession obtained prior to warning the accused of his constitutional rights and that, as such, they represent[ed] a codification of the requirements of *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 [1966]

. . . ." *State* v. *Vollhardt*, supra, 38. We disagreed and concluded that the purpose of the statutes was "to ensure that an accused is presented before the session of the Circuit Court next held . . . ." Id., 39. Thus, *Vollhardt* did not involve the issue presented in this case. A statute may be clear and unambiguous as applied in one context but not in another. Cf. *Lexington Ins. Co.* v. *Lexington Healthcare Group, Inc.*, 311 Conn. 29, 42, 84 A.3d 1167 (2014) ("[the] court's determination that [a contract] term . . . was unambiguous, in the specific context of the case that was before it, [was] not dispositive of whether the term is clear in the context of a wholly different matter").

[11] Although Representative Testo stated that § 54-1c allowed the police to hold an accused person for "at least" twenty-four hours before presentment, it is clear that, unless the arrest occurs shortly before or during the weekend, the police are allowed to hold an accused person only *up to* twenty-four hours, as the circumstances of the present case reflect.

[12] We note that *McNabb* and *Mallory* were decided before the United States Supreme Court issued its decision in *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), when it was quite possible that an accused person who was being detained in jail pending presentment in court would not have been advised of his constitutional rights to remain silent and to be represented by an attorney. Since the court's decision in *Miranda*, there has been less reason for concern that police will delay presentment in order to prevent an accused person from being advised of those rights. We recognize, however, that § 54-1c makes a statement obtained after the accused person should have been presented in court inadmissible regardless of whether the person has been advised of his rights in accordance with *Miranda*. We further recognize that, even if an accused person has been advised of his constitutional rights, and even if the purpose of delaying presentment was not to obtain a confession, a lengthy detention without being presented in court for arraignment is unlawful, in and of itself. See, e.g., General Statutes § 54-1g. We conclude only that, when a confession was obtained before the accused person should have been presented in court, § 54-1c does not provide a remedy for a subsequent, unlawful delay in presentment.

[13] Charles F. Greene Homes is a residential complex located in Bridgeport.

[14] The state further claims that, under *State* v. *Hopes*, 26 Conn. App. 367, 374–75, 602 A.2d 23, cert. denied, 221 Conn. 915, 603 A.2d 405 (1992), proof that the pistol was within the defendant's dominion and control in an unsecured area in his van, while the van was in a public place, was sufficient to establish that he was carrying the pistol on his person. See id., 375 (to establish that defendant carried pistol in violation of § 29-35 [a], state must prove that firearm was "within the defendant's control or dominion in a public area"). According to the state, this interpretation is consistent with the language of § 29-35 (a) implicitly providing that having an unsecured pistol in a motor vehicle is within the scope of the conduct prohibited by the statute. See General Statutes (Rev. to 2009) § 29-35 (a) (identifying limited circumstances under which pistol may be transported in motor vehicle). The state makes no claim, however, that it requested that the trial court instruct the jury in this regard. Instead, the trial court instructed the jury that the term "carry" in § 29-35 (a) means "to have or to bear upon or about one's person." In addition, the court instructed the jury that "there must be proof that the defendant had knowledge that he was knowingly carrying a pistol on his person" and that "knowing or conscious contact with an item, albeit fleeting and momentary, is sufficient to constitute possession." The jury reasonably could have understood these instructions to mean that it was required to find that the defendant had some physical contact with the pistol in order to find him guilty under § 29-35 (a). In such circumstances, our review of the defendant's claim of evidentiary insufficiency is limited to the theory on which the case was submitted to the jury.

[15] We express no opinion as to whether this instruction is a correct statement of the requirements of § 29-35 (a).